SLIP OP. 07-72

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| PARKDALE INTERNATIONAL, LTD., RIVERVIEW STEEL CO., LTD., and SAMUEL, SON & CO., LTD., <br><br> Plaintiffs, <br><br> and <br><br> RUSSEL METALS EXPORT, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Jane A. Restani, Chief Judge <br><br> Court No. 06-00289 |

OPINION

[Plaintiffs' and plaintiff-intervenor's motions for preliminary injunctions denied.]

Dated: May 11, 2007

Hunton & Williams, LLP (Richard P. Ferrin and William Silverman) for the plaintiffs.

Sharretts, Paley, Carter & Blauvelt, PC (Beatrice A. Brickell and Peter J. Baskin) for the plaintiff-intervenor.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Mark B. Lehnardt), of counsel, for the defendant.

Restani, Chief Judge:  This case is before the court on plaintiffs Parkdale

International, Ltd., Riverview Steel Co., Ltd., and Samuel, Son & Co., Ltd.'s, and plaintiff-

intervenor Russel Metals Export's (collectively, "plaintiffs") motions for preliminary injunctions to prevent the liquidation of certain entries of goods.[1]

Plaintiffs are importers and exporter-resellers of certain corrosion-resistant carbon steel flat products from Canada that are covered by an antidumping duty order. See Certain Corrosion-Resistant Carbon Steel Flat Prods. & Certain Cut-to-Length Carbon Steel Plate from Canada, 58 Fed. Reg. 44,162, 44,162 (Dep't Commerce Aug. 19, 1993) (antidumping duty order). Plaintiffs seek liquidation or reliquidation of entries from a two-year period commencing on August 1, 2003, and ending on July 31, 2005. Plaintiffs claim they are entitled to liquidation at their producer's deposit rate under the "automatic liquidation rule," 19 C.F.R. § 351.212(c)(1),[2] because the entries at issue were not the subject of periodic administrative

---

[1] Liquidation is the "final computation or ascertainment of duties . . . accruing upon entry" of the goods. Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1351 (Fed. Cir. 2006) (quotation omitted).

[2] The regulation at issue reads in relevant part:

> (1) If the Secretary does not receive a timely request for an administrative review of an order (see paragraph (b)(1), (b)(2), or (b)(3) of § 351.213), the Secretary, without additional notice, will instruct the Customs Service to:
>
>   (i) Assess antidumping duties or countervailing duties, as the case may be, on the subject merchandise described in § 351.213(e) at rates equal to the cash deposit of, or bond for, estimated antidumping duties or countervailing duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption; and
>
>   (ii) To continue to collect the cash deposits previously ordered.
>
> (2) If the Secretary receives a timely request for an administrative

(continued...)

review proceedings and, therefore, did not receive specific reseller rates. See Certain Corrosion-Resistant Carbon Steel Flat Prods. from Canada, 71 Fed. Reg. 13,582, 13,583 (Dep't Commerce Mar. 16, 2006) (final results of antidumping duty administrative review); Certain Corrosion-Resistant Carbon Steel Flat Prods. from Canada, 72 Fed. Reg. 12,758, 12,758 (Dep't Commerce Mar. 19, 2007) (final results of antidumping duty administrative review) (collectively, "Final Results"). In such a case, they assert that the automatic liquidation rule of 19 C.F.R. § 351.212(c)(1) should apply, despite a policy published by defendant United States (the "Government"), which provides that a periodic review of entries for any entity in the same chain of sale will result in a combined "all others" rate for any unreviewed reseller. See Antidumping & Countervailing Duty Proceedings: Assessment of Antidumping Duties, 68 Fed. Reg. 23,954, 23,954 (Dep't Commerce May 6, 2003) ("Reseller Policy").[3]

    The Government challenges jurisdiction. It notes that plaintiffs did not participate in the applicable administrative reviews leading to the Final Results, which stated, in boilerplate

---

[2](...continued)
  review of an order (see paragraph (b)(1), (b)(2), or (b)(3) of
  § 351.213), the Secretary will instruct the Customs Service to
  assess antidumping duties or countervailing duties, and to continue
  to collect cash deposits, on the merchandise not covered by the
  request in accordance with paragraph (c)(1) of this section.

19 C.F.R. § 351.212(c)(1)–(2) (emphasis added).

[3] This policy was adopted after notice was published in the Federal Register, and comments from interested parties were considered. See Antidumping & Countervailing Duty Proceedings: Assessment of Antidumping Duties, 63 Fed. Reg. 55,361, 55,362–63 (Dep't Commerce Oct. 15, 1998) (notice and request for comment on policy concerning assessment of antidumping duties); Antidumping & Countervailing Duty Proceedings: Assessment of Antidumping Duties, 67 Fed. Reg. 13,599, 13,599 (Dep't Commerce Mar. 25, 2002) (additional comment period).

language, that pursuant to the Reseller Policy the "all others" rate would apply to unreviewed resellers whose producers were reviewed.  See Certain Hot-Rolled Carbon Steel Flat Prods., Certain Cold-Rolled Carbon Steel Flat Prods., Certain Corrosion-Resistant Carbon Steel Flat Prods. & Certain Cut-to-Length Carbon Steel Plate from Canada, 58 Fed. Reg. 37,099, 37,103–04 (Dep't Commerce July 9, 1993) (final determinations of sales at less than fair value) (describing all others rate as a combination of the rates of two producers).  The Government argues that the fact that the Reseller Policy is mentioned in the Final Results dictates the conclusion that plaintiffs' claims should be construed as a challenge to the Department of Commerce's ("Commerce") determination under 19 U.S.C. § 1675(a).  The Government contends that because a § 1675(a) determination is among those listed in 19 U.S.C. § 1516a, plaintiffs' challenge should have been brought in this Court pursuant to 28 U.S.C. § 1581(c).  See 19 U.S.C. § 1516a(a)(2)(B)(iii).  According to the Government, because 28 U.S.C. § 1581(c) could have been invoked, and was not a manifestly inadequate means to obtain relief, plaintiffs cannot now invoke residual jurisdiction under § 1581(i).[4]

---

[4] 28 U.S.C. § 1581 states in relevant part:

> (c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.
> . . . .
> (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for –
>
> > (1) revenue from imports or tonnage;

(continued...)

Plaintiffs respond that application of the Reseller Policy is a decision separate from the administrative review, despite the fact that it is reflected in boilerplate in a periodic review determination under 19 U.S.C. § 1675(a). According to plaintiffs, application of the Reseller Policy is a decision which relates to the liquidation instructions, and can be challenged only under 28 U.S.C. § 1581(i). See Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003) (holding that a challenge to liquidation instructions falls under § 1581(i) jurisdiction).

In this case, plaintiffs cannot bring suit under § 1581(c) because they did not participate in the review proceeding. See 28 U.S.C. § 2631(c) (stating that only a party to the "proceeding in connection with which the matter arose" may bring an action challenging the results of a determination listed in 19 U.S.C. § 1516a). The jurisdictional issue here is whether plaintiffs were required to bring a challenge to the generally applicable Reseller Policy in such proceedings, even though they could not have participated as parties with entries to be reviewed without mooting their case.[5] Stated another way, the court must determine whether 28 U.S.C.

---

[4](...continued)
>(2)  tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>(3)  embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>(4)  administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

[5]  The parties agree that plaintiffs were not prohibited from filing a case brief before the agency challenging the policy even without participating in a review of their entries. The issue is whether under these conditions they must file such a brief to preserve jurisdiction.

§ 1581(c) provides a mandatory and adequate avenue to relief that precludes suit under the broad residual jurisdiction of § 1581(i). This is a question that has confronted the court on many occasions, but the increasingly convoluted analysis required to resolve it may indicate that it is time to consider more deeply the meaning of "manifestly inadequate."

The term "manifestly inadequate," as applied in the context of this Court's jurisdiction, arose out of the concern that 28 U.S.C. § 1581(i) jurisdiction should be avoided when the use of such jurisdiction would completely gut the requirements of other provisions in § 1581. See United States v. UniRoyal, Inc., 69 CCPA 179, 187, 687 F.2d 467, 475 (1982) (Nies, J., concurring) (articulating view that other forms of relief must be "manifestly inadequate" before jurisdiction may be invoked under § 1581(i)). The concern was particularly acute as the plain language of § 1581(i) seemed to allow a party to file suit without following the mandatory exhaustion steps of protest and protest denial in a customs action, the prerequisites for § 1581(a) jurisdiction. See id. at 182–83, 687 F.2d at 471; see also Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546, 1549 (Fed. Cir. 1983). The principle was later applied to unfair trade cases, where challenges to findings of dumping and subsidization and duty rate calculations proceed through a carefully orchestrated administrative process before court challenges under 28 U.S.C. § 1581(c) are allowed. See, e.g., Miller & Co. v. United States, 824 F.2d 961, 963–64 (Fed. Cir. 1987). Over the years, the manifestly inadequate standard has been applied numerous times to determine whether § 1581(i) jurisdiction would attach instead of jurisdiction under other provisions of § 1581. The practical result has been a test that, the

Court No. 06-00289                                                                                              Page 7

Government asserts, requires that jurisdiction under the other sections be a virtual impossibility. This is not a proper interpretation of the statute or its judicial gloss.

More recently, the harbor maintenance tax ("HMT") litigation demonstrated that two avenues of § 1581 jurisdiction may exist simultaneously, at least in theory.  The Government argued vigorously that HMT "payments" must be protested, but the courts ruled that payment was not a protestable decision and, accordingly, that § 1581(i) jurisdiction applied.  See U.S. Shoe Corp. v. United States, 114 F.3d 1564, 1570 (Fed. Cir. 1997), aff'd, 523 U.S. 360 (1998). In subsequent cases brought by other parties, the Federal Circuit found that the protest of an HMT refund request denial was possible and that § 1581(a) jurisdiction was available.  See Swisher Int'l, Inc. v. United States, 205 F.3d 1358, 1369 (Fed. Cir. 2000).  These two holdings create a seeming anomaly which allows a party to assert § 1581(i) jurisdiction where § 1581(a) could have been exercised instead.[6]

It is time to consider what these two cases, and other recent cases, mean for the court-created "manifestly inadequate" limitation upon the seemingly clear broad statutory grant of jurisdiction in § 1581(i).  After reviewing these cases, the court concludes that where the core of a dispute is within § 1581(i), i.e., it relates to a general issue of administration and enforcement policy as to the matters listed in § 1581(i)(1)–(3), § 1581(i) should function

---

[6] In the HMT litigation, the claimants in U.S. Shoe asserted § 1581(i) jurisdiction before the Federal Circuit clarified in Swisher that they could have invoked an administrative procedure that would have led to a protestable decision.  Even if the plaintiffs in U.S. Shoe were not aware of the potential administrative remedy, the availability of jurisdiction under § 1581(i) has always hinged on whether the plaintiffs could have used a method that would result in § 1581(a) jurisdiction, not whether they actually used it.  See Omni U.S.A., Inc. v. United States, 840 F.2d 912, 915 (Fed. Cir. 1988) (holding that a legal remedy "is not made inadequate simply because appellant failed to invoke it within the time frame it prescribes").

according to its terms, unless it is clear that another provision of § 1581 applies. See H.R. Rep. No. 96-1235, at 48 (1980) as reprinted in 1980 U.S.C.C.A.N. 3729, 3760 ("Subsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.").

Turning to the circumstances of this case, the court concludes that, even if plaintiffs had filed a case brief contesting application of the Reseller Policy, Commerce's determination regarding the issue would not have constituted a 19 U.S.C. § 1675(a) determination which qualifies for jurisdiction under 28 U.S.C. § 1581(c). Section 1581(c) provides for judicial review of specific determinations listed in 19 U.S.C. § 1516a, including periodic reviews under 19 U.S.C. § 1675(a). See 19 U.S.C. § 1516a(a)(2)(B)(iii). Those reviews relate specifically to periodic reviews of entries covered by an antidumping or countervailing duty order. As indicated, none of plaintiffs' entries were reviewed.

The mere inclusion of boilerplate language in the Final Results that repeats Commerce's standard Reseller Policy does not make application of that policy a § 1516a determination any more than accepting an HMT payment was a Customs decision in U.S. Shoe. Commerce declared its Reseller Policy in 2003, and merely stated its intention to apply that policy in standard liquidation instructions in the Final Results. A mere statement declaring Commerce's intention to order Customs to apply a default rate is not a § 1516a determination. Cf. SKF USA Inc. v. United States, Slip Op. 07-43, 2007 WL 867308, at *4 (CIT Mar. 23, 2007) (statement in final results that liquidation instructions will be issued within 15 days of

publication of results is not § 1516a determination); Mukand Int'l Ltd. v. United States, 452 F. Supp. 2d 1329, 1332 (CIT 2006) (same); see also Consol. Bearings, 348 F.3d at 1002 ("[A]n action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results."); Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1304 (Fed. Cir. 2004) (finding that the issuance of "clean up" liquidation instructions was not a decision specified in 19 U.S.C. § 1516a; therefore, jurisdiction was not available under 28 U.S.C. § 1581(c)). These cases make clear that parties are not required to challenge substantive determinations under § 1581(c), with which they agree, in order to preserve a challenge to instructions governing the liquidation of goods. Instead, parties are to file § 1581(i) suits to challenge liquidation instructions, particularly where they do not reflect Commerce's underlying 19 U.S.C. § 1516a determination. Accord Canadian Wheat Bd. v. United States, Slip Op. 07-61, 2007 WL 1219687, at *5–*8 (CIT Apr. 24, 2007) (holding that plaintiffs who prevailed before a NAFTA bi-national panel, rather than this Court, could nevertheless challenge the terms of the resulting notice of revocation under 28 U.S.C. § 1581(i)(4)). The general rule appears to be that liquidation instructions lead to § 1581(i) jurisdiction unless they directly implement a 19 U.S.C. § 1516a determination, such as the final results of an administrative review under § 1675. If they incorrectly implement a § 1675 determination, relief will be granted pursuant to an Administrative Procedures Act ("APA") action brought under 28 U.S.C. § 1581(i). See Shinyei, 355 F.3d at 1309.

Here, plaintiffs challenge a general policy that has existed since 2003, which was adopted after a five-year notice and comment period, and which the Government has defended

vigorously. While it was not impossible under the law for Commerce to abandon the policy in response to a brief filed by plaintiffs during the relevant administrative reviews, such an outcome would have been extraordinarily unlikely. Further, plaintiffs' entries were not reviewed pursuant to 19 U.S.C. § 1675, and plaintiffs could not have had their entries reviewed and also preserve their claims, which depended on the entries being unreviewed.

        Even assuming, arguendo, that Commerce's response to a case brief could have been construed as part of a determination under 19 U.S.C. § 1516a, application of the <u>Reseller Policy</u> was not part of the actual § 1675 review of entries and 28 U.S.C. § 1581(c) jurisdiction is at best unclear. Just as it was unclear prior to <u>Swisher</u> that there was a protest avenue to jurisdiction in HMT cases and, therefore, § 1581(i) jurisdiction attached, in this case it is unclear that there is a § 1581(c) avenue to relief. Plaintiffs are not required to pursue such a potential remedy. An unclear avenue to jurisdiction is not an adequate jurisdictional remedy. At the heart of this case is a claim challenging a general administrative policy setting general liquidation instructions, not a 19 U.S.C. § 1675 determination upon review of entries.

        The Customs Courts Act of 1980 was intended to eliminate jurisdictional disputes so that matters clearly within this Court's subject matter jurisdiction could be decided promptly and without undue expense. <u>See</u> H.R. Rep. No. 96-1235, at 20 (1980), <u>as reprinted in</u> 1980 U.S.C.C.A.N. 3729, 3731 (stating that the Customs Courts Act was intended to provide a "comprehensive system [that] will ensure greater efficiency in judicial resources and uniformity in the judicial decision making process"). Arguments about whether these cases should be decided pursuant to 28 U.S.C. § 1581(c) or (i) do nothing to fulfill this purpose. Taking a

broader and statutorily consistent view of § 1581(i) jurisdiction, as did the courts in Consolidated Bearings, 348 F.3d at 1002, Shinyei, 355 F.3d at 1309, and Mukand Int'l, Ltd. v. United States, No. 2006-1258, 2007 WL 571026, at *3 (Fed. Cir. Feb. 6, 2007) (non-precedential) (holding that a claim for reliquidation of entries found not subject to an antidumping duty order was properly brought under § 1581(i)(4)), better serves the purpose of the statute.[7]

        Under this holding, parties who mistakenly assert § 1581(c) jurisdiction will not be prejudiced by their error. There is a two-year statute of limitations under 28 U.S.C. § 2636(i) for § 1581(i) actions, while the statute of limitations for § 1581(c) cases is much shorter. 19 U.S.C. § 1516a(a)(2). Thus, the party who mistakenly files under 28 U.S.C. § 1581(c) can amend to assert § 1581(i) jurisdiction.[8]

---

    [7] Neither International Custom Products, Inc. v. United States, 467 F.3d 1324 (Fed. Cir. 2006), nor Norsk Hydro Canada, 472 F.3d 1347, dictate a different result. International Custom Products involved a choice between § 1581(a) or (i) jurisdiction. As indicated, preservation of customs protest procedures is a special concern. Norsk Hydro Canada involved a choice between § 1581(a) and (c) jurisdiction, and the court found jurisdiction under (c), while emphasizing the need to determine the essence of the action. Id. at 1355. We do not know what the result would have been if the latter case was pursued as an (i) case and the "manifestly inadequate" standard was at issue, as the court was not called upon to make that determination.

    [8] To avoid refiling the 28 U.S.C. § 1581(i) action, the summons and complaint for a potential § 1581(c) action should be filed together because 28 U.S.C. § 2632(a) specifies a concurrent summons and complaint for (i) actions. For § 1581(c) actions, 28 U.S.C. §§ 2632(c) and 2637(d) refer to the court's rules on timing of the summons and complaint, but 19 U.S.C. § 1516a(a)(2) governs and allows thirty days after the publication of the results to file a summons and another thirty days for the complaint. The practice comments of the Rules of this Court, however, encourage simultaneous filing of a summons and complaint in a § 1581(c) action. See USCIT R. 3 cmt. 2 ("[C]ounsel are encouraged to commence any action described in Section 516A(a)(2) or (3) of the Tariff Act of 1930 and 28 U.S.C. § 1581(c) by the concurrent filing of a summons and complaint. This will serve to expedite the prosecution of the action."). In contrast, in protest denial cases under § 1581(a), a formal complaint may be filed years after the summons, which commences the action, see DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318
(continued...)

The court does not conclude that § 1581(i) actions will allow parties to preempt agency decision-making in antidumping and countervailing duty cases. Under 28 U.S.C. § 2637(d), the court may require administrative exhaustion where appropriate. Following this statute, the court has not hesitated to deny relief when parties have failed to raise issues before the appropriate administrative bodies, if such an action would not be futile. See, e.g., Carpenter Tech. Corp. v. United States, 464 F. Supp. 2d 1347, 1349–50 (CIT 2006) (dismissing case for failure to exhaust administrative remedies in administrative review of an antidumping action); Ceramica Regiomontana, S.A. v. United States, 16 CIT 358, 362 (1992) (dismissing case for failure to exhaust administrative remedies in an administrative review of a countervailing duty action).[9] Here the issue was thoroughly explored through comment on the policy and subsequent agency consideration.

---

[8](...continued) (Fed. Cir. 2006) (summons functions as the initial pleading, rather than the complaint). While there can be as much as a thirty-day gap in § 1581(c) filings, when viewed in the context of the § 1581(a) permissible gap, this may be seen as essentially concurrent.

[9] Similarly, parties will have little or no incentive to abstain from using available administrative remedies to obtain a longer statute of limitations under § 1581(i). Although Shinyei, 355 F.3d at 1309, indicates that liquidation will not prevent remedies if a post-liquidation APA challenge to liquidation instructions is successful, that case involved a claim of invalid liquidation contrary to the results of completed litigation under 28 U.S.C. § 1581(c). In most cases, the risk of irremediable liquidation will compel a plaintiff promptly to file suit. In this case, plaintiffs arguably commenced suit before a § 1581(c) case could have commenced and Commerce was willing to delay liquidation instructions to Customs for only two weeks in order to allow the court to consider its jurisdiction. Further, where parties seek a return of funds or lower estimated duty rates, there is additional financial incentive to file suit promptly. Finally, because none of plaintiffs' entries are the subject of the 19 U.S.C. § 1675 reviews that led to the Final Results, the proceeding is not delayed or impeded by a separate 28 U.S.C. § 1581(i) action.

Congress did not intend for parties to guess if their action fits into a § 1581 pigeonhole. Those claims that involve clearly protestable matters, or are at the core of an antidumping or countervailing duty determination, must proceed under § 1581(a) or (c) respectively. Other matters not clearly provided for in § 1581(a)–(h) were intended to fall into § 1581(i) so that no one would be denied an avenue of relief in this general subject matter area. See H.R. Rep. 96-1235, at 48; see also id., at 59 ("In any civil action other than the ones in subsections (a)–(c) of this section, the Court of International Trade shall review the matter as provided for in the Administrative Procedures Act, 5 U.S.C. 706."); id., at 52 ("Subsection (i) [of 28 U.S.C. § 2631] is a new provision which states that a civil action other than one specified in subsections (a)–(h) of this section may be commenced by a person adversely affected or aggrieved by a government agency action within the meaning of 5 U.S.C. 702. This subsection is intended to correlate with and complement the broad grant of residual jurisdiction found in proposed section 1581(i)."); 5 U.S.C. § 704 (providing review under the APA for a "final agency action for which there is no other adequate remedy in a court"). This action involves a generally applicable administrative policy, unreviewed entries, and liquidation instructions not dependent on the results of the review. Jurisdiction is appropriate under 28 U.S.C. § 1581(i).

Plaintiffs next assert that they would suffer irreparable harm if their entries are liquidated before this action is decided.[10] This is likely so, unless the rule of Shinyei is broadly applied,[11] but even were they able to establish irreparable harm, plaintiffs must also demonstrate

---

[10] The preliminary injunction sought would extend through all levels of appeal.

[11] It is unclear under Shinyei whether prior liquidation of entries would ever act as a bar
(continued...)

that there is some chance they would succeed on the merits of this action. See <u>Torrington Co. v. United States</u>, 20 CIT 1293, 1295 (1996) ("The decision in <u>FMC [Corp. v. United States</u>, 3 F.3d 424 (Fed. Cir. 1993),] makes it clear that showing irreparable harm . . . does not obviate the need to show some likelihood of success on the merits."). Plaintiffs have not shown such a chance.

19 C.F.R. § 351.212(c) is silent as to what constitutes the "request for an administrative review" that eliminates automatic liquidation at the producer's deposit rate. The Government interprets the regulation to mean a request by or about any seller in the non-reviewee's chain of sale. Plaintiffs interpret it to mean a request by or applicable to the reseller at issue.

The Government describes the purpose of the policy as follows:

> [The] <u>Reseller Policy</u> addresses an ambiguity in Commerce's regulations regarding the assessment rate for liquidation of a reseller's entries of a producer's merchandise when: (1) the reseller's entries entered under the producer's cash-deposit rate; (2) a review is requested of the producer, but not of the reseller; and (3) the producer did not have knowledge at the time of the sale to the reseller that the merchandise was ultimately destined for the United States.

(Def's Combined Mot. to Dismiss & Resp. to Pls.' Mot. for J. On the Agency R. 22.)

Commerce may in the first instance interpret its own regulation. <u>Cathedral Candle Co. v. U.S. Int'l Trade Comm'n</u>, 400 F.3d 1352, 1363 (Fed. Cir. 2005) ("[I]t is well settled that an agency's interpretation of its own regulations is entitled to broad deference from the courts."). Even if the court accorded Commerce's interpretation a lesser degree of deference because it is a change in policy, the <u>Reseller Policy</u> is consistent with the regulation in the context of an

---

[11](...continued)
to relief in an APA review of liquidation instructions. See <u>supra</u> note 9.

administrative review.  First, because a producer receives a new rate upon review, the cash deposit rate plaintiffs seek no longer has validity.  Thus, there seems to be no good reason for the cash deposit rate to be automatically applied.  Second, there is no reason that a reseller or its importer should be entitled to choose among the rates it prefers when none is specific to it, and when it may request its own rate.  Plaintiffs object to the "all others" rate, but they had a clear, although perhaps expensive, avenue for avoiding it – they could have obtained a reseller-specific rate.[12]

Furthermore, although 19 C.F.R. § 351.212(c) refers to reviews of <u>an order</u>, it is sales of particular producers or exporters which are reviewed.  <u>See</u> 19 C.F.R. § 351.212(c)(2); 19 C.F.R. § 351.213(b).  Thus, it is the sales of merchandise made in various steps from the producer that are the subject of the review.  As the <u>Reseller Policy</u> applies when the producer does not know that the goods are destined for the U.S. market, the <u>Reseller Policy</u> focuses on the export sales where the price discrimination may have occurred.  Therefore, Commerce's interpretation is reasonable in the context of the entire review process, and the court sees nothing in the <u>Reseller Policy</u> that is forbidden by statute or regulation, and no indication that the policy is arbitrary and capricious.

Moreover, as Commerce merely interpreted the ambiguous words "request for an administrative review" in 19 C.F.R. §  351.212(c), formal notice and comment procedures under the APA were not required.  <u>Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs</u>, 260 F.3d 1365, 1375 (Fed. Cir. 2001) (interpretive rules exempt from APA notice and comment

---

[12]  The parties also agree a reseller review may be requested as a protective matter, and withdrawn if no one else requests a review in the applicable chain of sale.

procedures). While the court notes that Commerce might have just as easily published notice of a regulation amendment, as a matter of fairness, there was a long notification period,[13] which allowed for comment. Further, the reseller policy has been ruled not impermissibly retroactive. Parkdale Int'l v. United States, 475 F.3d 1375, 1378–79 (Fed. Cir. 2007) (discussing retroactive application of the Reseller Policy in a prior administrative review period).[14]

The remainder of the injunctive factors do not weigh in plaintiffs' favor and cannot overcome the fact that their claim, thus far, fails on the merits. See FMC, 3 F.3d at 431 (affirming denial of preliminary injunction without discussion of balance of hardships or public interest, concluding that proof of irreparable harm did not "outweigh [plaintiff's] failure to establish a likelihood of success on the merits").

Accordingly, plaintiffs' motion for a preliminary injunction is DENIED.

                                                       /s/ Jane A. Restani
                                                        Jane A. Restani
                                                        Chief Judge

Dated this 11th day of May, 2007.
New York, New York.

---

[13] See supra note 3.

[14] The court does not reach the issue of whether any injunction granted could apply to plaintiff-intervenor's entries. The res of an action brought under § 1581(i) is not as specific as that of an action brought under § 1581(c). Thus, defendant's arguments in that regard are problematic.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| PARKDALE INTERNATIONAL, LTD., RIVERVIEW STEEL CO., LTD., and SAMUEL, SON & CO., LTD., | : : : : |
| Plaintiffs, | : : |
| and | : : |
| RUSSEL METALS EXPORT, | : : |
| Plaintiff-Intervenor, | : : |
| v. | : : |
| UNITED STATES, | : : |
| Defendant. | : : |

Before:  Jane A. Restani, Chief Judge

Court No. 06-00289

<u>JUDGMENT</u>

This case having been submitted for decision and the court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED that Plaintiffs Parkdale International, Ltd., Riverview Steel Co., Ltd., and Samuel, Son & Co., Ltd.'s motion for a preliminary injunction is denied. Plaintiff-Intervenor Russel Metals Export's motion for a preliminary injunction is also denied.

      /s/ Jane A. Restani
    Jane A. Restani
    Chief Judge

Dated: This 11th day of May, 2007.
     New York, New York.

# NOTICE OF ENTRY AND SERVICE

     This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

     Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

                        or

     Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

                                          Tina Potuto Kimble
                                          Clerk of the Court

Date: _____     By: _____
                                                               Deputy Clerk