SLIP OP. 07-122

**UNITED STATES COURT OF INTERNATIONAL TRADE**

———————————————————— :
                                                            :
PARKDALE INTERNATIONAL, LTD.,           :
RIVERVIEW STEEL CO., LTD., and              :
SAMUEL, SON & CO., LTD.,                          :
                                                            :
                        Plaintiffs,                        :
                                                            :        Before:  Jane A. Restani, Chief Judge
                        and                                  :
                                                            :        Court No. 06-00289
RUSSEL METALS EXPORT,                          :
                                                            :
                        Plaintiff-Intervenor,         :
                                                            :
                        v.                                    :
                                                            :
UNITED STATES,                                        :
                                                            :
                        Defendant.                       :
———————————————————— :

OPINION

[Plaintiffs' motion for judgment on the agency record denied, judgment for defendant.]

Dated: August 8, 2007

Hunton & Williams, LLP (Richard P. Ferrin and William Silverman) for the plaintiffs.

Sharretts, Paley, Carter & Blauvelt, PC (Beatrice A. Brickell and Peter J. Baskin) for the plaintiff-intervenor.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand and Michael D. Panzera); Mark B. Lehnardt, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

Restani, Chief Judge:  Plaintiffs Parkdale International, Ltd., Riverview Steel Co.,

Ltd., and Samuel, Son & Co., Ltd., and plaintiff-intervenor Russel Metals Export (collectively,

"Plaintiffs") are importers and exporter-resellers of certain corrosion-resistant carbon steel flat

products from Canada.  Since 1993, Plaintiffs' merchandise has been subject to an antidumping

duty order.  See Certain Corrosion-Resistant Carbon Steel Flat Prods. & Certain Cut-to-Length

Carbon Steel Plate from Canada, 58 Fed. Reg. 44,162, 44,162 (Dep't Commerce Aug. 19, 1993)

(antidumping duty order).  Plaintiffs challenge the validity of the United States Department of

Commerce's ("Commerce") interpretation of its regulations governing the assessment of

antidumping duties on merchandise entered into the United States by resellers who are

unaffiliated with a foreign producer.  For the reasons stated below, the court finds that it has

jurisdiction to adjudicate this dispute, but that Commerce's interpretation is valid.

## Background

Under the United States' retrospective system of assessing antidumping duties,

Commerce instructs Customs and Border Protection ("Customs") to collect cash deposits of

estimated antidumping duties from importers at the time the subject merchandise is entered,

instead of immediately assessing duties on entries of subject merchandise.  See 19 C.F.R.

§§ 351.211(b), 351.212(a) (2007).  Assessment of antidumping duties occurs after the

opportunity for an administrative review of the antidumping duty order.[1]  See 19 C.F.R.

§ 351.213.  Under 19 U.S.C. § 1675(a) (2000), Commerce publishes a notice of opportunity to

---

[1]  Prior to 1984, Commerce automatically conducted administrative reviews on
antidumping duty orders every year.  See 19 U.S.C. § 1675(a)(1) (1982); 19 C.F.R. § 353.53(a)
(1983).  Subsequently, Congress passed the Trade and Tariff Act of 1984, Pub. L. No. 98-573, §
611, 98 Stat. 2948, 3031 ("1984 Act"), which made yearly administrative reviews contingent
upon a request from an interested party, or at the initiative of the Secretary of Commerce.

request an administrative review in the "anniversary month" in which the relevant antidumping

duty order was published.  19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.102(b).  If a request for

review is received, Commerce is required to determine "the normal value and export price . . . of

each entry of the subject merchandise" and "the dumping margin for each such entry."  19 U.S.C.

§ 1675(a)(2)(A).  After the dumping margins are established, Commerce is required to "publish

in the Federal Register the results of such review, together with notice of any duty to be assessed

[or] estimated duty to be deposited."  Id. § 1675(a)(1).  Following publication, the final results of

an administrative review become "the basis for the assessment of countervailing or antidumping

duties on entries of merchandise covered by the determination and for deposits of estimated

duties."  Id. § 1675(a)(2)(C).

          Because administrative reviews under § 1675(a) are granted only on request, not

all entries of subject merchandise are necessarily subject to the requested review.  Congress

foresaw this possibility, but elected not to legislate a particular method for assessing duties on

entries not covered by an administrative review.  See H.R. Rep. No. 98-1156, at 181 (1984)

(Conf. Rep.), as reprinted in 1984 U.S.C.C.A.N. 5220, 5298 (delegating to Commerce the

responsibility to promulgate regulations governing automatic assessment of duties on entries for

which no request for review was received).  To fill this gap in statutory authority, Commerce

published regulations, currently codified at 19 C.F.R. § 351.212(c), that govern the automatic

assessment of duties on entries for which no review was requested.  See Mittal Can., Inc. v.

United States, 461 F. Supp. 2d 1325, 1329 (CIT 2006).  Under those regulations, if no one

requests an administrative review of any entity subject to an antidumping duty order, Commerce

will instruct Customs to assess antidumping duties at "rates equal to the cash deposit of, or bond

for, estimated antidumping duties . . . required on that merchandise at the time of entry."  19

C.F.R. § 351.212(c)(1)(i).  If Commerce receives a timely request for a review of an order, it will

instruct Customs "to assess antidumping duties . . . and to continue to collect cash deposits, on

the merchandise not covered by the request in accordance with paragraph (c)(1) of this section."

Id. § 351.212(c)(2).

Commerce has a stated policy that "company-specific assessment rates must be

based on the sales information of the first company in the commercial chain that knew, at the

time the merchandise was sold, that the merchandise was destined for the United States."

Antidumping & Countervailing Duty Proceedings: Assessment of Antidumping Duties, 63 Fed.

Reg. 55,361, 55,362 (Dep't Commerce Oct. 15, 1998) (notice and request for comment on policy

concerning assessment of antidumping duties) ("Reseller Notice").  By identifying the party that

had knowledge of the destination of the subject merchandise, Commerce determines which entity

was the "price discriminator" that engaged in the dumping, and hence which company's dumping

margin should apply to a given entry.  See Antidumping & Countervailing Duty Proceedings:

Assessment of Antidumping Duties, 68 Fed. Reg. 23,954, 23,960 (Dep't Commerce May 6,

2003) (notice of policy concerning assessment of antidumping duties) ("Reseller Policy").  When

conducting an antidumping investigation, Commerce examines the records of responding

producers, but rarely examines the sales of resellers such as Plaintiffs.  Reseller Notice, 63 Fed.

Reg. at 55,362.  Instead of determining whether a producer had knowledge of the destination of

its sales to identified resellers, Commerce assumes that a producer knew the destination of all of

its sales to every reseller it identifies during the initial investigation.  Id.  Because the producer is

assumed to be the first company in the commercial chain that knew of the product's destination,

cash deposits for antidumping duties on all merchandise sold to identified resellers is initially set

at the producer's cash deposit rate.  Id.

          This assumption remains in effect until the time for an administrative review.  If

no interested party requests a review of a reseller or its producer during the anniversary month of

the antidumping duty order pursuant to 19 U.S.C. § 1675(a), Commerce will continue to assume

that the producer was aware of the ultimate destination of the goods that it sold to the reseller and

assess duties on the reseller's entries at the cash deposit rate placed on the producer under the

automatic assessment regulation, 19 C.F.R. §351.212(c)(1).  Reseller Notice, 63 Fed. Reg. at

55,363.  If a review is requested for a reseller, Commerce will cease to assume that the producer

was aware of the reseller's entries, and set a rate specific to the reseller if Commerce determines

it was unaffiliated with a producer.  Id.  If someone requests a review of a producer, Commerce

will determine whether the producer in question was aware of the ultimate destination of sales to

a given reseller.  Id.  If Commerce discovers that the producer was aware of the destination of a

sale to a reseller, Commerce will find that the producer set the price of sale into the United States

and assess antidumping duties accordingly.  Id.  If, however, Commerce finds that a producer

was unaware of the ultimate destination of the sales to a reseller, it can no longer rely on its prior

assumption to apply the producer's assessment rate calculated during the administrative

review.  Id.

          In such a case, Commerce has at least two options to determine what assessment

rate should apply to the unaffiliated reseller that is not covered by the results of the

administrative review.  First, Commerce could retain the status quo, applying the producer's cash

deposit rate used at the time the merchandise was entered.  Following this approach, Commerce

would retain its initial assumption that, at the time of the investigation (or last review), the

producer was aware of the destination of the reseller's merchandise, even though that assumption

proved false during the current administrative review.  Alternatively, Commerce could reject its

initial assumption that the producer was aware of the ultimate destination of the merchandise that

it sold to the reseller.  Absent that assumption, the reseller would fall into the category of

unaffiliated exporters who did not participate in the investigation.  The assessment rate for

unreviewed parties is the so-called "all others" rate.[2]

       For most of the time that the antidumping duty order at issue in this case has

been in effect, Commerce chose the first option, instructing Customs that "if the exporter is not

a firm covered in this review, or the original investigation, but the manufacturer is, the [cash]

deposit rate will be the rate established for the most recent period for the manufacturer of the

merchandise."  Certain Corrosion-Resistant Carbon Steel Flat Prods. & Certain Cut-to-Length

Carbon Steel Plate from Canada, 62 Fed. Reg. 18,448, 18,468 (Dep't Commerce Apr. 15, 1997)

(final results of antidumping duty administrative reviews).[3]  As exporter-resellers, Plaintiffs

---

[2]  The all others rate is the simple average of the company-specific margins calculated in
the original antidumping investigation.  See Reseller Notice, 63 Fed. Reg. at 55,362.

[3]  See also Certain Corrosion-Resistant Carbon Steel Flat Prods. & Certain Cut-to-Length
Carbon Steel Plate from Canada, 63 Fed. Reg. 12,725, 12,744 (Dep't Commerce Mar. 16, 1998)
(final results of antidumping duty administrative reviews) ("[I]f the exporter is not a firm covered
in this review, a prior review, or the original less than fair value (LTFV) investigation, but the
manufacturer is, the cash deposit rate will be the rate established for the most recent period for
the manufacturer of the merchandise."); Certain Corrosion-Resistant Carbon Steel Flat Prods. &
Certain Cut-to-Length Carbon Steel Plate from Canada, 66 Fed. Reg. 11,553, 11,555 (Dep't
Commerce Feb. 26, 2001) (amended final results of antidumping duty administrative reviews)
("[I]f the exporter is not a firm covered in this review, a previous review, or the original LTFV
investigation, but the manufacturer is, the cash deposit rate will be the rate established for the
(continued...)

purchase the subject merchandise from Canadian producers and arrange the eventual sale of the

goods in U.S. commerce.  It is uncontested that Plaintiff resellers are not affiliated with their

producers; the producers in question did not have knowledge of the ultimate destination of the

merchandise they sold to Plaintiffs.  Thus, Plaintiffs' entries have historically been liquidated at

the cash deposit rate they paid when the merchandise entered.  In 1998, however, Commerce

published a notice and request for comment concerning the automatic assessment of

antidumping duties aimed at "clarify[ing]" this practice.  Reseller Notice, 63 Fed. Reg. at

55,361.  Under Commerce's proposal, "automatic liquidation at the cash deposit rate required at

the time of entry [would] only apply to a reseller if no administrative review has been requested,

either of the reseller or of any producer of the merchandise the reseller exported to the United

States, and the reseller does not have its own cash deposit rate."  Id. at 55,362; see also Mittal,

461 F. Supp. 2d at 1337 n.10 ("[T]he Reseller Policy example presents an exceedingly rare,

perhaps anomalous, case where the importer does not request a review but Commerce learns of

information prior to liquidation that sheds light on the rate that was in effect at the time of the

reseller's entries.").  If a review of the reseller's producer was requested, and the producer was

not aware of the final destination of the merchandise it sold to that reseller, the reseller's entries

would be liquidated at the all others rate, unless there was a rate specific to it. Reseller Notice,

63 Fed. Reg. at 55,362.  The new interpretation was adopted in 2003.  See Reseller Policy, 68

Fed. Reg. at 23,954.

   In 2006 and 2007, Commerce completed administrative reviews of the

---

[3](...continued)
most recent period for the manufacturer of the merchandise.").

antidumping duty order on carbon steel flat products.  See Certain Corrosion-Resistant Carbon

Steel Flat Prods. from Canada, 71 Fed. Reg. 13,582, 13,583 (Dep't Commerce Mar. 16, 2006)

(final results of antidumping duty administrative review); Certain Corrosion-Resistant Carbon

Steel Flat Prods. from Canada, 72 Fed. Reg. 12,758, 12,758 (Dep't Commerce Mar. 19, 2007)

(final results of antidumping duty administrative review) (collectively, "Final Results").

Reviews were requested for Plaintiffs' producers, but no request was made to review Plaintiff

resellers.  In the Final Results, Commerce stated that it would "instruct [Customs] to liquidate

unreviewed entries at the all-others rate if there is no rate for the intermediate company(ies)

involved in the transaction."  71 Fed. Reg. at 13,584; see also 72 Fed. Reg. at 12,759 ("[W]e

will instruct [Customs] to liquidate unreviewed entries at the "All Others" rate if there is no rate

for the intermediate company(ies) involved in the transaction.").  Because Plaintiffs are

unaffiliated resellers, and their producers were subject to the final results of the administrative

review, but Plaintiffs were not, and Plaintiffs' entries were consequently ordered to be

liquidated at the all others rate.[4]  (See Pls.' Mem. in Supp. Mot. J. on the Agency R. 2–3.)

          Plaintiffs challenge the validity of the Reseller Policy, claiming that the

"clarification" is irreconcilably inconsistent with § 351.212(c), that it is arbitrary, capricious,

and not supported by governing law, and that Commerce failed to comply with the procedural

requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., in issuing

_____

          [4] Plaintiffs' entries made between August 1, 2003, and July 31, 2004, were liquidated prior to commencement of this litigation.  The court denied a motion for a preliminary injunction preventing liquidation of the entries made between August 1, 2004, and July 31, 2005, though liquidation is currently enjoined by a separate order of this Court in another case addressing separate issues.  See Parkdale Int'l, Ltd. v. United States, Court No. 07-166 (CIT May 18, 2007) (temporary restraining order).

the Reseller Policy.  (See Pls.' Mem. in Supp. Mot. J. on the Agency R. 15–27.)

## Jurisdiction and Standard of Review

The court addressed the question of its jurisdiction to hear this case in a prior

opinion denying Plaintiffs' motions for preliminary injunctions.  See Parkdale Int'l, Ltd. v.

United States, __ F. Supp. 2d __, Slip Op. 07-72 (CIT May 11, 2007).  The court adheres to its

conclusion, as further explained below, that jurisdiction is proper under 28 U.S.C. § 1581(i)(4),

as an action related to the administration and enforcement of antidumping duty orders.

The Court of International Trade was created by the Customs Courts Act of

1980, Pub. L. No. 96-417, 94 Stat. 1727, which granted the court exclusive jurisdiction over

certain matters to provide a "comprehensive system [that] will ensure greater efficiency in

judicial resources and uniformity in the judicial decision making process" in the area of

international trade.  H.R. Rep. No. 96-1235, at 20 (1980), as reprinted in 1980 U.S.C.C.A.N.

3729, 3731.  In that Act, Congress set out a number of different areas of jurisdiction, two of

which are relevant here.  First, 28 U.S.C. § 1581(c) vests the court with authority to review "any

civil action commenced under section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a]."  28

U.S.C. § 1581(c).  To bring suit under § 1581(c), a party must contest a "factual finding[] or

legal conclusion[]" made in a determination listed in 19 U.S.C. § 1516a(a)(2)(B).  19 U.S.C.

§ 1516a(a)(2)(A).  Among these are factual findings or legal conclusions made in a final

determination of an administrative review of an existing antidumping duty order conducted

pursuant to 19 U.S.C. § 1675.  Id. § 1516a(a)(2)(B)(iii).

Second, Congress provided this Court with broad residual jurisdiction under 28

U.S.C. § 1581(i) to hear "any civil action commenced against the United States . . . that arises

out of any law of the United States providing for . . . tariffs [or] duties . . . on the importation of

merchandise for reasons other than the raising of revenue," as well as cases challenging

Commerce's "administration and enforcement with respect to the matters referred to" in the

remainder of § 1581.  28 U.S.C. § 1581(i)(2), (4).  Congress has emphasized, however, that "the

Court of International Trade [should] not permit subsection (i) . . . to be utilized to circumvent

the exclusive method of judicial review of those antidumping and countervailing duty

determinations listed in [19 U.S.C. § 1516a]."  H.R. Rep. No. 96-1235, at 48.  Thus, it has been

held that § 1581(i) "'may not be invoked when jurisdiction under another subsection of § 1581

is or could have been available, unless the remedy provided under that other subsection would

be manifestly inadequate.'"  Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359

(Fed. Cir. 1992) (quoting Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987))

(emphasis removed).

       Defendant contends that Plaintiffs had the opportunity to file a case brief

challenging the Reseller Policy in the Final Results, and thus should have filed suit under 28

U.S.C. § 1581(c).  (Def.'s Combined Mot. to Dismiss & Resp. to Pls.' Mot. for J. Upon the

Agency R. 11–16.)  Plaintiffs counter that application of the Reseller Policy was a foregone

conclusion, and that Commerce's mere invocation of the Reseller Policy is not a factual finding

or a legal conclusion supporting Commerce's determination in the Final Results.  (Pls.' Br. on

Jurisdiction 2–5.)

       In deciding between the appropriate bases for jurisdiction, the "'mere recitation

of a basis for jurisdiction, by either a party or a court, cannot be controlling[;]'" instead, the

court "'look[s] to the true nature of the action . . . in determining jurisdiction.'"  Norsk Hydro

Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (quoting Williams v. Sec'y of

Navy, 787 F.2d 552, 557 (Fed. Cir. 1986)).  In this case, Plaintiffs challenge, on facial grounds,

a generally applicable policy regarding the assessment of duties on entries which were not

covered by the results of an administrative review under 19 U.S.C. § 1675(a).[5]  Plaintiffs do not

seek to challenge the factual conclusion that they are unaffiliated resellers, nor do they seek to

challenge the legal conclusion that, as unaffiliated resellers, the terms of the Reseller Policy

apply to them.  Indeed, Plaintiffs' entries were excluded from the Final Results.  Thus, the

---

[5]  A facial challenge is a broad-based attack on a statute or regulation's consistency with existing law.  A facially invalid regulation or law therefore cannot be justified under any potential application, and is void.  When making a facial challenge to a regulatory policy such as that at issue here, "the challenger must establish that no set of circumstances exists under which the [regulation] would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).  Further, when ruling on such a challenge, "the agency's construction of the statute is entitled to great weight."  Melamine Chems., Inc. v. United States, 732 F.2d 924, 928 (Fed. Cir. 1984).

Defendant argues that Plaintiffs' claims regarding the 2004 to 2005 administrative review are not ripe for adjudication because, at the time Plaintiffs filed suit, the final results of the review had not been issued.  (Def.'s Combined Mot. to Dismiss & Resp. to Pls.' Mot. for J. Upon the Agency R. 16.)  To determine whether an action is ripe for judicial review, the court must determine: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003).  Under the first prong, the court must determine "whether the issue 'is purely legal [or] . . . would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'"  Clean Air Implementation Project v. EPA, 150 F.3d 1200, 1204 (D.C. Cir. 1998) (quoting Natural Res. Def. Council, Inc. v. EPA, 22 F.3d 1125, 1133 (D.C. Cir. 1994)).  As the D.C. Circuit recently reaffirmed, a "'purely legal claim in the context of a facial challenge . . . is presumptively reviewable.'"  Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 440 F.3d 459, 464 (D.C. Cir. 2006) (quoting Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1282 (D.C. Cir. 2005) (internal quotations omitted); see also Rothe Dev. Corp. v. Dep't of Def., 413 F.3d 1327, 1335 (Fed. Cir. 2005) ("'A case is generally ripe if any remaining questions are purely legal ones . . . .'") (quoting Monk v. Huston, 340 F.3d 279, 282 (5th Cir. 2003)).  The issues in this case are purely legal, and do not concern any factual determination made in the Final Results.  In terms of hardship, the court finds that although postponing the action with respect to the 2004 to 2005 entries would work only a minimal hardship, if any, on the parties, it would not benefit the court in any way, as the necessary facts to resolve this case are already definite.  Consequently, the court finds that this action is ripe for review.

nature of Plaintiffs' complaint is, by definition, divorced from any final determination regarding

entries that were within the scope of the <u>Final Results</u>.  Commerce's reference to the mere

existence of the <u>Reseller Policy</u> does not render the <u>Final Results</u> a final legal determination

with respect to all entries of carbon steel flat products from Canada.

        Treating the reference to the <u>Reseller Policy</u> in the <u>Final Results</u> as a § 1516a

determination would create procedural incentives inconsistent with the purpose of the Customs

Courts Act and the APA.  Plaintiffs' claims arise from the APA, and challenge the statutory

basis for, and procedural flaws in the adoption of, the <u>Reseller Policy</u>.  Because a claim under

the APA accrues at the time of "final agency action," 5 U.S.C. § 704, facial challenges to

regulations and claims arising from a failure to comply with APA procedures accrue at the time

the rule was published, not when the rule is applied to a plaintiff.[6]  <u>See Dunn-McCampbell</u>

_____

        [6] Following the court's request at oral argument, Defendant cited cases suggesting that
Plaintiffs' claims could be time-barred under the two-year statute of limitations for § 1581(i)
actions provided in 28 U.S.C. § 2636(i).  (<u>See</u> Def.'s Resp. to Ct.'s Request for Citation.)  As
noted above, various APA claims, for example, a failure to provide notice and comment, accrue
at the time a rule is put into effect, and might have been time-barred in this case.  Failure to file
suit within the statute of limitations period is an affirmative defense, which must be claimed in a
defendant's first responsive pleading.  USCIT R. 8(d) ("[A] party shall set forth affirmatively . . .
[a] statute of limitations . . . and any other matter constituting an . . . affirmative defense.").
Although an exception is made for statutes of limitations that are jurisdictional in nature, courts
have not treated the failure to comply with the two-year statute of limitations under 28 U.S.C.
§ 2636(i) as a jurisdictional issue under § 1581(i).  <u>See Mitsubishi Elecs. Am., Inc. v. United
States</u>, 44 F.3d 973 (Fed. Cir. 1994).  In <u>Mitsubishi</u>, the plaintiff filed a suit under § 1581(a) and
§ 1581(i), challenging automatic liquidation of certain entries at a 94 percent ad valorem rate
required under a preliminary antidumping determination, rather than the 13.43 percent rate
established in the final results.  <u>Id.</u> at 975.  Although jurisdiction was not available under
§ 1581(a), the court found that the automatic assessment of antidumping duties "pertain[ed] to
the 'administration and enforcement' of laws 'providing for . . . duties'" under § 1581(i).  <u>Id.</u> at
977 (quoting 28 U.S.C. § 1581(i)).  Thus, the court concluded that "the trial court apparently had
jurisdiction over this case under section 1581(i)(2), (4)."  <u>Id.</u>  Having concluded that this Court
had jurisdiction, however, the Federal Circuit then found that the plaintiff's claim was barred
                                                                        (continued...)

Royalty Interest, Inc. v. Nat'l Park Serv., 112 F.3d 1283, 1287 (5th Cir. 1997) (holding that a

facial challenge to regulation accrues when the agency publishes its rule in the Federal

Register); Wind River Mining Corp. v. United States, 946 F.2d 710, 715 (9th Cir. 1991)

(holding that "[i]f a person wishes to challenge a mere procedural violation in the adoption of a

regulation or other agency action, the challenge must be brought within six years of the

decision" and that "[s]imilarly, if the person wishes to bring a policy-based facial challenge to

the government's decision, that too must be brought within six years of the decision").  A claim

raising procedural objections accrues at the time that the rule goes into effect because the

relevant harm has already been inflicted: an interested party has lost the opportunity to alter the

agency's decision through full participation in the regulatory process.  See, e.g., Wind River,

946 F.2d at 715 (holding that grounds for a cause of action for facial or procedural challenges to

---

[6](...continued)
under the two-year statute of limitations in § 2636(i).  Id. at 978.  This conclusion implies that
jurisdiction under § 1581(i) may be had despite a party's failure to meet the filing deadline under
§ 2636(i).  As the Supreme Court has recently stated, "'[i]f the Legislature clearly states that a
threshold limitation on a statute's scope shall count as jurisdictional, the courts and litigants will
be duly instructed and will not be left to wrestle with the issue.'"  Rockwell Int'l Corp. v. United
States, 127 S.Ct. 1397, 1405–06 (2007) (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 515–16
(2006)); but c.f. Bowles v. Russell, 127 S.Ct. 2360, 2365 (2007) (in the context of habeas corpus,
distinguishing Arbaugh).  The statute of limitations in question provides that "[a] civil action of
which the Court of International Trade has jurisdiction under section 1581 of this title, other than
an action specified in subsections (a)–(h) of this section, is barred unless commenced in
accordance with the rules of the court within two years after the cause of action first accrues."  28
U.S.C. § 2636(i).  The statute's reference to actions of which the court "has jurisdiction" being
barred does not clearly state a Congressional intent to treat this statute of limitations as
jurisdictional.  Defendant's cited case pertains to the statute of limitations for the Court of
Federal Claims, and does not specifically mention the jurisdiction of this Court under 28 U.S.C.
§ 1581(i), or the statute of limitations provided for such actions in 28 U.S.C. § 2636(i).  See John
R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir. 2006) (discussing statute
of limitations for the Court of Federal Claims under 28 U.S.C. § 2501).  Defendant failed to
timely raise the statute of limitations defense, and therefore the court finds that affirmative
defense was waived.

a regulation "will usually be apparent to any interested citizen within a six-year period following

promulgation of the decision" and because "[t]he government's interest in finality outweighs a

late-comer's desire to protest the agency's action as a matter of policy or procedure"); Thrift

Depositors of Am., Inc. v. Office of Thrift Supervision, 862 F. Supp. 586, 590 (D.D.C. 1994)

(stating that a "challenge to an agency's promulgation of an interim final rule without notice and

comment is a case or controversy") (citing Tenn. Gas Pipeline Co. v. Fed. Energy Regulatory

Comm'n, 969 F.2d 1141 (D.C. Cir. 1992)).  Furthermore, encouraging parties to file suit as soon

as a rule is published preserves the court's ability to remand in time for the agency to correct its

errors before the new policy has been given widespread reliance.  If the court were to recognize

that this claim could, and therefore must, have been raised under § 1581(c), a party might wait

years before it opts not to participate in an administrative review.  Only then would it obtain an

opportunity to file a case brief in an administrative review to challenge the automatic application

of the Reseller Policy to its admittedly unreviewed entries, and thereby eventually obtain review

of the procedural flaws in the adoption of the Reseller Policy.  Although there may be some

cases where a facial or procedural challenge to a regulation should be raised in an administrative

review, the nature of Plaintiffs' objections to the Reseller Policy suggest that this case does not

involve a determination within the meaning of 19 U.S.C. § 1516a.  Given the purpose of the

Customs Courts Act, to provide a "comprehensive system [that] will ensure greater efficiency in

judicial resources and uniformity in the judicial decision making process," H.R. Rep. No.

96-1235, at 20, the court finds that a mandate requiring Plaintiffs to raise this argument in

administrative review would favor procedural formality over the swift resolution of cases ripe

for adjudication.

The Federal Circuit's holding in <u>Miller</u> is not contrary to this outcome. In that case, the Federal Circuit considered whether a party could bring a challenge to a final determination in an administrative review that was issued outside the statutory time limit. 824 F.2d at 962. The plaintiff brought suit under § 1581(i), arguing that Commerce's decision to issue an untimely final determination was a procedural matter concerning the administration and enforcement of the administrative review, not the substance of the review itself. <u>Id.</u> at 963–64. The court disagreed, holding that "the procedural correctness of a countervailing duty determination, as well as the merits, are subject to judicial review," and could be reviewed under § 1581(c). <u>Id.</u> at 964. <u>Miller</u> involved a challenge to Commerce's failure to comply with procedural rules in a specific administrative review, and the consequent invalidity of the results issued pursuant to that review. In this case, Plaintiffs do not argue that Commerce was incorrect in applying the <u>Reseller Policy</u>, nor do they argue that the <u>Final Results</u> are inconsistent with Commerce's established assessment policy, as stated in the <u>Reseller Policy</u>. Unlike <u>Miller</u>, Plaintiffs make no argument concerning Commerce's conduct during the review or authority to issue the <u>Final Results</u>.

Nor is this outcome contrary to this Court's decision in <u>American Signature, Inc. v. United States</u>, 477 F. Supp. 2d 1281 (CIT 2007), <u>appeal docketed</u> No. 2007-1216 (Fed. Cir. Mar. 19, 2007). In that case, the plaintiff filed suit under § 1581(i), seeking an order requiring Commerce to instruct Customs to assess duties on its unreviewed entries at an amended rate that had been corrected for ministerial errors, both retrospectively and prospectively. <u>Id.</u> at 1286. Commerce had determined, in a prior administrative review concerning a similarly-situated party, that the proper method of requesting a refund for excess duties was to request an

administrative review, and then obtain interest on overpayment of duties based on the results of

that review pursuant to 19 U.S.C. § 1673f.  The plaintiff failed to request an administrative

review to challenge Commerce's practice, instead filing immediately under § 1581(i).  The court

found that the plaintiff could have brought their claim under § 1581(c), and therefore that

jurisdiction was unavailable under § 1581(i).  In American Signature, however, the plaintiff

sought to challenge a legal determination made in the context of an administrative review.

Commerce published no separate notice or request for comment regarding this determination.

The Reseller Policy, in contrast, is a policy announced following notice and comment under the

APA, and is separate from any administrative review.

      Even assuming that the reference to the Reseller Policy constituted a legal

conclusion in an administrative review, the court disagrees with Defendant's contention that

relief under another subsection of § 1581 must be a virtual impossibility before a party may

bring suit under § 1581(i).  The Federal Circuit's treatment of jurisdiction in cases arising from

the unconstitutionality of the harbor maintenance tax ("HMT") illustrates a somewhat broader

view of § 1581(i).  In the case of U.S. Shoe Corp. v. United States, 114 F.3d 1564 (Fed. Cir.

1997), the court was called upon to consider the constitutionality of the HMT.  The plaintiff

filed under § 1581(i), but the defendant argued that § 1581(i) jurisdiction was unavailable

because U.S. Shoe should have protested Customs's collection of the HMT, which, following

denial of that protest, would have led to jurisdiction under § 1581(a).  Id. at 1568.  The court of

appeals disagreed, finding that Customs's ministerial acceptance of an HMT payment involved

no  "decision-making process," and therefore was not a decision within the meaning of 19

U.S.C. § 1514.  Id. at 1569.  In the absence of § 1581(a) jurisdiction, the court held

that § 1581(i) jurisdiction was available.  Id. at 1570–71.  Subsequently, in Swisher

International, Inc. v. United States, 205 F.3d 1358 (Fed. Cir. 2000), the Federal Circuit held that

"[n]either our decision [in U.S. Shoe] nor that of the Supreme Court . . . reached the question of

whether section 1581(a) jurisdiction would have been available had a protest been filed and

denied following the filing and denial of a refund request."  Id. at 1364.  The court concluded

that "U.S. Shoe does not preclude our consideration of section 1581(a) jurisdiction in this case

where a refund request and protest were, in turn, filed and denied."  Id.  The court thus allowed

the suit to proceed under 28 U.S.C. § 1581(a) to challenge the denial of the plaintiff's protest of

a denial of a refund of its HMT payments.  Id. at 1365.  Taken together, these two cases suggest

that although the plaintiff in U.S. Shoe could have obtained jurisdiction under § 1581(a) by

filing a refund request and protest with Customs, jurisdiction under § 1581(i) was

simultaneously available.

        Defendant implies that § 1581(a) jurisdiction was available in Swisher, but not in

U.S. Shoe, because "once the HMT had been declared unconstitutional, a determination by

Customs not to grant a refund to the plaintiff, unlike a constitutional challenge to a statute

placing Customs in a ministerial role, was a protestable decision."  (Def.'s Reply Supp. Mot. to

Dismiss 9.)  This argument might have merit if the plaintiff's protest in Swisher had been

denied after the HMT was declared unconstitutional.  However, in its complaint, Swisher stated

that it filed a refund request on September 28, 1994, and protested the denial of that refund

request on November 23, 1994.  See Swisher Int'l v. United States, No. 95-03-00322, Compl.

¶¶ 12, 16 (CIT Mar. 29, 1995).  Customs denied that protest on March 26, 1995.  See Swisher,

205 F.3d at 1361.  This Court did not declare the HMT unconstitutional until almost seven

Court No. 06-00289                                                                  Page 18

months later, on October 25, 1995, <u>U.S. Shoe Corp. v. United States</u>, 19 CIT 1284, 907 F. Supp.

408 (1995), and the Supreme Court did not affirm that finding until March 31, 1998,  <u>United</u>

<u>States v. U.S. Shoe Corp.</u>, 523 U.S. 360 (1998).  Swisher's protest was filed and denied long

before the HMT was declared unconstitutional by any court.  The court can discern no reason

why a refund request was not also an avenue to jurisdiction for the plaintiff in <u>U.S. Shoe</u>.  Thus,

the court finds that the timing of the two cases does not resolve the jurisdictional anomaly

presented by the Federal Circuit's treatment of these challenges to the HMT.[7]

   The Federal Circuit's reasoning in <u>Swisher</u> points to several factors that gave rise

to § 1581(i) jurisdiction in <u>U.S. Shoe</u>.  The Federal Circuit recognized its holding in <u>Miller</u> that

§ 1581(i) is not available when another jurisdictional provision was or could have been used to

gain relief, but nevertheless held that its finding in <u>U.S. Shoe</u> did "not control subsequent suits

asserting similar challenges but in different procedural postures."  <u>Swisher</u>, 205 F.3d at 1364.

Instead, the court explained that its "holding in <u>Miller</u> (and other decisions) [was] meant merely

to prevent a party from asserting residual (subsection (i)) jurisdiction when jurisdiction under

another subsection <u>would be appropriate</u>."  <u>Id.</u> (emphasis added).  Parties challenging the HMT

---

  [7]  The court notes that the plaintiff in <u>U.S. Shoe</u> filed suit in this Court on November 3,
1994, prior to Customs's publication of an interim rule governing protests.  <u>See</u> <u>User Fee</u>
<u>Protests</u>, 59 Fed. Reg. 60,044, 60,044 (Dep't Treasury Nov. 21, 1994) (notice of interim rules).
At that time, Customs recognized only a protest of payment procedure, which was invalidated by
<u>U.S. Shoe</u>.  The rule was to provide a protest of the "calculation, collection and demand for
payment" of user fees under various statutes, including the HMT.  <u>See</u> <u>User Fee Protests</u>, 59 Fed.
Reg. at 60,044.   Recognition of the refund protest procedures by the courts and Customs
occurred as a result of <u>Swisher</u>.  <u>See</u> <u>id.</u>, 205 F.3d at 1364–65.  Nonetheless, the refund route was
declared to have existed, a previously unsettled route to jurisdiction, but not an impossible one.
Thus, U.S. Shoe could have filed a refund request and protest prior to Customs's publication of
specific guidance on the matter.

could arrive in court via more than one "procedural path," in part because "it appear[ed] that

there was much confusion in Customs and among exporters as to the proper procedure for

challenging the constitutionality of the HMT."  Id. at 1364–65.  It appears that the U.S. Shoe

plaintiffs could have filed a refund request and protest, but the Federal Circuit found that "there

was not one obvious jurisdictional basis that this court could have required the U.S. Shoe

plaintiff to use."  Id.  The court finds the reasoning of Swisher persuasive here.  Like U.S. Shoe,

there is no single obvious jurisdictional basis that would be most appropriate in these

circumstances.  Nor is it clear, as a procedural matter, that a challenge to a regulatory policy

governing the automatic liquidation of entries not covered by an administrative review must be

brought to the attention of an agency in an administrative review.

    Defendant argues that application of § 1581(i) jurisdiction would force the court

to review similar agency determinations under disparate standards of review.  (Def.'s Reply in

Supp. Mot. to Dismiss 13–14.)  Defendant claims that, under the court's analysis, if Commerce

were to find in an administrative review that a reseller was affiliated with its producer, the

reseller would be required to challenge that determination in the context of that administrative

review.  (Id. at 13.)  A subsequent court challenge to that determination would be brought under

§ 1581(c), subject to the substantial evidence standard of review.  (Id.)  In contrast, Defendant

argues, if Commerce were to determine in an administrative review that a reseller was not

affiliated with a producer, that reseller would not be required to bring a challenge in the

administrative review.  (Id. at 14.)  Instead, it would immediately file suit under § 1581(i),

subject to the arbitrary and capricious standard of review.  (Id.)  Defendant's argument fails to

distinguish the type of challenge involved in the above hypothetical and the challenge presented

in this case.  A reseller's suit seeking to overturn Commerce's finding that it was unaffiliated

with a producer would constitute a challenge to a factual determination made in administrative

review, which is among the determinations enumerated in 19 U.S.C. § 1516a(a)(2)(B).  Unlike

Defendant's hypothetical, the challenge in this case is not directed to a factual or legal

determination Commerce made in the course of the <u>Final Results</u>, but to the consistency of the

<u>Reseller Policy</u> with Commerce's regulations and the APA.

   Accordingly, the court finds that jurisdiction is proper under 28 U.S.C. § 1581(i).

In cases brought under § 1581(i), the court is directed to "review the matter as provided in

section 706 of title 5."  28 U.S.C. § 2640(e).  Section 706 directs the court to "hold unlawful

and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Typically, agency action is

arbitrary and capricious "if the agency has relied on factors which Congress has not intended it

to consider, entirely failed to consider an important aspect of the problem, offered an

explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of agency

expertise."  <u>Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463

U.S. 29, 43 (1983).

<u>Discussion</u>

**A.**  **The <u>Reseller Policy</u> is Not Inconsistent with 19 C.F.R. § 351.212(c).**

   Plaintiffs argue that the <u>Reseller Policy</u> is irreconcilably inconsistent with

Commerce's regulation governing the automatic liquidation of antidumping duties, located at 19

C.F.R. § 351.212(c).  Under that regulation, "[i]f a review is not requested, duties are assessed at

the rate established in the completed review covering the most recent prior period or, if no

review has been completed, the cash deposit rate applicable at the time merchandise was

entered."  Id. § 351.212(a).  As noted above, the regulation provides that "[i]f the Secretary does

not receive a timely request for an administrative review of an order . . . the Secretary, without

additional notice, will instruct the Customs Service to. . . [a]ssess antidumping duties or

countervailing duties . . . at rates equal to the cash deposit . . . required on that merchandise at

the time of entry."  Id. § 351.212(c)(1).  Similarly, if Commerce "receives a timely request for

an administrative review of an order," it will instruct "the Customs Service to assess

antidumping duties or countervailing duties . . . on the merchandise not covered by the request

in accordance with paragraph (c)(1) of this section."  Id. § 351.212(c)(2).

         Plaintiffs contend that when a request for review is made, but a reseller is not

named in the request for an administrative review, the reseller's entries must be liquidated at the

cash deposit rate required at entry in accordance with § 351.212(c)(1).  Plaintiffs' argument

relies on the assumption that if no review was requested for the reseller, then none of its entries

were "covered by the request" for review of an order.  That assumption ignores the situation that

the Reseller Policy is designed to address.  When a review of a producer is requested,

Commerce may still be acting under the assumption that the producer is aware of the ultimate

destination of its sales to the reseller.  Thus, at the time the review was requested, the reseller's

entries were covered by the request to review the producer's sales to the United States and to

identified resellers.  19 C.F.R. § 351.212(c)(2) applies only to entries that are not covered by the

request for the review; it says nothing about entries that were covered by the request for review,

but are not within the scope of the final results of the review.  The Reseller Policy fills this gap

in the regulation and is therefore not inherently inconsistent with 19 C.F.R. § 351.212(c).

   Plaintiffs argue that the all others rate is often a less accurate reflection of the

reseller's actual prices, and therefore a less "proper" rate than the producer's cash deposit rate.

(Pls.' Mot. for J. on the Agency R. 16–17.)  Accurate or not, requiring Commerce to liquidate an

unaffiliated reseller's entries at its producer's cash deposit rate perpetuates Commerce's use of a

false assumption.  If Commerce had perfect information at the time the cash deposit rate was

set, unaffiliated resellers would have posted cash deposits at the all others rate, not at their

producers' rates.  While, ideally, Commerce would determine whether a producer knew of the

destination of its sales to resellers during the initial antidumping investigation, Commerce has

chosen to apply its resources elsewhere.  To require Commerce to adhere to a producer's cash

deposit rate in liquidating entries, even after it discovers that the assumption upon which the use

of that rate was based is false, would not result in the rate the reseller should have received, i.e.,

the "proper rate."  See Mittal, 461 F. Supp. 2d at 1338 ("[I]t would be strange indeed to prefer

assessment at the deposit rate when the producer's administrative review will determine what

the appropriate assessment rate is based on the producer's testimony relating to the dispositive

factor: i.e., whether the producer knew that the merchandise sold to the reseller was destined for

the U.S. market.").  Under the Reseller Policy, Commerce has chosen to apply the rate the

reseller would have been assigned had Commerce initially known that the reseller, rather than

the producer, was the first party in the commercial chain to know of the destination of the

merchandise.  Use of the all others rate most closely adheres to Commerce's policy of setting

antidumping duty rates based on the first entity in the commercial chain that has knowledge of

the destination of the subject merchandise.  Thus, the all others rate is the "proper" rate.

**B.      The <u>Reseller Policy</u> is not Arbitrary or Capricious**

Plaintiffs also contend that the <u>Reseller Policy</u> is inconsistent with the purpose of

the 1984 Act, and is therefore arbitrary, capricious, and otherwise not in accordance with law.

As Plaintiffs note, the 1984 Act was designed to limit the number of administrative reviews in

which interested parties expressed little or no interest.  H.R. Rep. No. 98-1156, at 181 (Conf.

Rep.) (stating that the amendment to 19 U.S.C. § 1675 "is designed to limit the number of

reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and

respondents, as well as the administering authority").  Congress chose to effect this policy by

requiring interested parties to request reviews during the anniversary month of a given

antidumping or countervailing duty order.  <u>See</u> <u>id.</u>; 19 U.S.C. § 1675(a).  Plaintiffs contend that

Commerce's former practice, automatically assessing duties at a producer's cash deposit rate for

unaffiliated resellers that lack a rate of their own, is more effective than the <u>Reseller Policy</u> at

reducing the number of requests for administrative reviews.  Under the <u>Reseller Policy</u>, a

reseller is more likely to request a review to protect its interests in the event that Commerce

determines that its entries are not covered by the request for a review of its producer.  Thus,

Plaintiffs argue that Commerce cannot derive authority to issue a policy that will effectively

increase the number of administrative reviews from an Act designed to reduce the number of

reviews.

Commerce agrees that the number of administrative reviews, vis-a-vis the prior

policy, may increase.  <u>See</u> <u>Reseller Notice</u>, 63 Fed. Reg. at 55,363.  Compared to pre-1984 Act

practice, however, the Reseller Policy will still result in a reduction in the number of reviews.

The Reseller Policy does not undermine Congress's intent to create a voluntary review system to

replace the old system of automatic reviews.  Indeed, the legislative history of the 1984 Act

indicates that Congress intended to allow Commerce to regulate the area of automatic

assessments.  See H.R. Rep. 98-1156, at 181 (1984) (Conf. Rep.) (stating that Commerce

"should provide by regulation for the assessment of antidumping and countervailing duties on

entries for which review is not requested, including the elimination of suspension of liquidation,

and/or the conversion of cash deposits of estimated duties, previously ordered").   Commerce

must balance a number of competing policy concerns in fashioning its assessment regulations.

See Reseller Policy, 68 Fed. Reg. at 23,957 (discussing concerns that resellers may "margin-

shop" and stating that incentives are needed to promote accurate margin calculations).  Plaintiffs

cite Congress's obvious concern with administrative efficiency in the 1984 Act, but there is

nothing in the 1984 Act to suggest that Congress intended to subordinate all other goals, such as

the consistent treatment of similarly situated resellers and the prevention of rate manipulation, to

the goal of reducing the number of administrative reviews.  Consequently, Commerce did not

rely on factors Congress did not intend it to consider, or ignore an important aspect of the

problem in issuing the Reseller Policy.

Plaintiffs claim that the legislative history of the 1984 Act "expressed Congress'

intention" to limit Commerce's discretion in creating automatic liquidation regulations.  (Pls.'

Mot. for J. on the Agency R. 10.)  Specifically, Plaintiffs argue that Congress intended to

prevent Commerce from creating an automatic assessment regulation that provides for other

than the "elimination of suspension of liquidation, and/or the conversion of cash deposit[s] of

estimated duties, previously ordered." Id. (quoting H.R. Rep. No. 98-1156, at 181 (Conf.

Rep.)).  Even assuming that this language would require Commerce to fashion automatic

liquidation regulations that liquidate only at the rate for "previously ordered" cash deposits, this

argument fails for the same reason the Reseller Policy is not inconsistent with the existing

automatic assessment regulations.  The cited legislative history applies only to "entries for

which review is not requested." Id.  The legislative history does not contemplate the treatment

of entries which were subject to the request for an administrative review, but are not covered by

the final results.  Commerce has authority to fill gaps in a legislative scheme it is entrusted to

administer, even where Congress has not provided a direct statement delegating rulemaking

authority.  See Viraj Group v. United States, 476 F.3d 1349, 1357 (Fed. Cir. 2007) (citing

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)) (discussing

implicit delegation of rulemaking authority).

           Plaintiffs also argue that the regulation "fails to consider an important aspect of

the problem" by increasing resellers' uncertainty as to whether they should request

administrative reviews.  (Pls.' Mot. for J. on the Agency R. 23–24.)  According to Plaintiffs,

prior to the Reseller Policy, an unaffiliated reseller knew with certainty that its entries would be

liquidated at the rate at which they were entered, absent a request for review of that reseller.

Under the new system, by contrast, a reseller that has been assumed to be affiliated with a

producer does not know whether its entries will be liquidated at the cash deposit rate until after

the close of requests for review.  If a request for review is made of a producer, the reseller will

not know what its liquidation rate will be until Commerce determines whether the producer

knew, or should have known, that sales to the reseller were destined for the United States.

The Reseller Policy does increase the uncertainty faced by resellers that have not

established their status as affiliated or unaffiliated.  Commerce acknowledged this outcome in

publishing the Reseller Policy, see Reseller Notice, 63 Fed. Reg. at 55,364, but determined that

the policy was justified despite that added imposition.  So long as a reseller continues to rely on

Commerce's initial assumption that it is affiliated with a given producer, that reseller will

remain vulnerable to Commerce's determination that its assumption is faulty.  In such a case,

however, a reseller's position is no worse than it would have been had Commerce investigated

the reseller in the original investigation.  At worst, the Reseller Policy increases resellers'

uncertainty about whether they will continue to be eligible for the undeserved benefit of

claiming a producer's rate to which they are not entitled.  Moreover, if a reseller wishes to avoid

the uncertainty that Commerce will review the nature of its relationship with a producer, the

reseller may request an administrative review of its own entries, and obtain a cash deposit rate

specific to it.  If, at the end of the anniversary month, it appears that no request has been made

for the producer in question, the reseller may withdraw its request.  Plaintiffs are correct that the

Reseller Policy will force many resellers to expend resources to be more vigilant to request a

review if they wish to avoid application of the all others rate.  Nevertheless, because the Reseller

Policy provides incentives for resellers to obtain rates specific to themselves, rather than relying

on a potentially faulty assumption by Commerce, the uncertainty introduced by the Reseller

Policy is not arbitrary or capricious.

**C.      Plaintiffs' Alleged Procedural Errors Were Harmless**

Plaintiffs also argue that the Reseller Policy is void because it was not passed in

accordance with the procedural requirements of the APA governing the publication of

regulations.  (Pls.' Mot. for J. on the Agency R. 19–20.)  The APA requires agencies to comply

with the various procedural requirements when issuing new "substantive" or "legislative" rules.

See 5 U.S.C. § 553 (2000).  These procedural requirements generally include a "notice of

proposed rule making . . . published in the Federal Register," and an opportunity for "interested

persons" to submit "written data, views, or arguments."  Id. § 553(b)–(c).  An agency is required

to consider the comments it receives and publish a final rule together with a "statement of . . .

basis and purpose" explaining the rationale for its decision.  Id. § 553(c).  The APA provides an

exception, however, from this requirement for "interpretative rules, general statements of policy,

or rules of agency organization, procedure, or practice," often called "interpretive rules."  Id.

§ 553(b).

        Although the Reseller Policy purports to be a "clarification" of 19 C.F.R.

§ 353.212, Plaintiffs argue that it is a legislative rule.  In determining whether a rule is

"legislative" or "interpretative" in character, the Federal Circuit has held that "'substantive

rules' . . . effect a change in existing law or policy or . . . affect individual rights and

obligations," while "'[i]nterpretive rules' . . . clarify or explain existing law or regulations."

Paralyzed Veterans of Am. v. West, 138 F.3d 1434, 1436 (Fed. Cir. 1998) (quoting Orengo

Caraballo v. Reich, 11 F.3d 186, 195 (D.C. Cir. 1993)) (other citations omitted).  According to

the Federal Circuit, "'[a]n interpretive statement simply indicates an agency's reading of a

statute or a rule.  It does not intend to create new rights or duties, but only reminds affected

parties of existing duties.'"  Id. (quoting Orengo Caraballo, 11 F.3d at 1436); see also Am.

Frozen Food Inst., Inc. v. United States, 18 CIT 565, 573, 855 F. Supp. 388, 396 (1994)

("[S]ubstantive or legislative-type rules are those which relate to and change the standards of

conduct, and have force of law."). Thus, if a rule "adopts 'a new position inconsistent with' an

existing regulation, or effects 'a substantive change in the regulation,' notice and comment are

required." U.S. Telecom Ass'n v. F.C.C., 400 F.3d 29, 35 (D.C. Cir. 2005) (quoting Shalala v.

Guernsey Mem'l Hosp., 514 U.S. 87, 100 (1995)) (emphasis omitted). This does not mean that

an interpretative rule must be devoid of all significance; an interpretive rule may "'suppl[y]

crisper and more detailed lines than the authority being interpreted.'" Orengo Caraballo, 11

F.3d at 195 (quoting Am. Mining Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1112

(D.C. Cir. 1993)). Thus, a clarification may prompt a party to behave differently from how it

would have acted in the absence of interpretive guidance.

        Turning to the policy at hand, the court finds that the Reseller Policy is not a new

position inconsistent with the existing regulation at 19 C.F.R. § 351.212(c). As discussed

above, the Reseller Policy applies to entries that are covered by the request for a review, but are

not covered by the final results of the review. It fills a gap in the existing regulatory scheme, but

does not alter the way in which § 351.212 governs liquidation of entries which were not covered

by a request for review. Similarly, because 19 C.F.R. § 351.212(c) does not address the

treatment of entries for which a request was made, but are not included in the final results of an

administrative review, the Reseller Policy does not effect a "substantive change" in the

regulation's provisions.

        Plaintiffs' argument would require the court to conclude that Commerce cannot

alter its established practice of liquidating unaffiliated resellers' entries at their producers' cash

deposit rate without complying with APA procedures, even if the former practice was not

adopted in a formal policy statement. Although many cases have required a showing that a prior

interpretation was formally adopted by an agency before a subsequent change may be subjected

to APA requirements, some cases have suggested that a longstanding practice is sufficient.

Compare Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579 (D.C. Cir. 1997) (finding

that government was not required to provide notice and comment to change its interpretation of

a regulation because it never authoritatively adopted a contrary interpretation) with Alaska

Prof'l Hunters Ass'n v. F.A.A., 177 F.3d 1030, 1031 (D.C. Cir. 1999) (finding that

interpretation followed for almost thirty years, and affirmed in agency adjudication, constituted

an authoritative interpretation that could not be altered without notice and comment

rulemaking); see also Shell Offshore Inc. v. Babbitt, 238 F.3d 622, 630 (5th Cir. 2001) (finding

that a change in "long established and consistent practice that substantially affects the regulated

industry" was subject to APA notice and comment requirements).  The court notes that,

although Commerce has not published a prior interpretation of this rule, it has frequently issued

instructions to Customs following administrative reviews reflecting its prior practice.  See supra

p. 6 and note 2.  Under the Reseller Policy, Commerce recognizes that resellers would face a

greater obligation to monitor the requests for review of their producers' entries, and to request

reviews of themselves if necessary.  See Reseller Notice, 63 Fed. Reg. at 55,363.  The court

need not resolve this question, however, because Plaintiffs have failed to argue that they were

harmed in any way by Commerce's failure to follow certain aspects of the APA.[8]

        Even assuming that Commerce's longstanding practice constitutes an

---

        [8] Thus, the court does not adhere to its prior opinion denying Plaintiffs' requested
preliminary injunction, Parkdale Int'l, __ F. Supp. 2d at __, Slip Op. 7-72,  to the extent that it
concludes that the Reseller Policy is an interpretive rule.

authoritative interpretation of 19 C.F.R. § 351.212, the rule is not automatically invalid.

Judicial review under the APA is conducted with "due account . . . of the rule of prejudicial

error."  5 U.S.C. § 706; <u>Intercargo Ins. Co. v. United States</u>, 83 F.3d 391, 394 (Fed. Cir. 1996)

("It is well settled that principles of harmless error apply to the review of agency proceedings.").

Thus, even if Commerce should have labeled the <u>Reseller Policy</u> a regulation, rather than a

"clarification," if it complied with all material requirements for the publication of a legislative

rule, the policy should not be voided.

        As noted, under ordinary circumstances the APA requires an agency to provide

notice and an opportunity for interested parties to comment on a proposed regulation.  It is

required to consider submissions and issue a statement of basis and purpose explaining why it

settled on the final legislative rule.  In this case, Commerce appears to have taken great pains to

comply with these requirements.  In 1998, Commerce published a notice in the Federal Register

identifying the proposed interpretation and requesting comments.  <u>Reseller Notice</u>, 63 Fed. Reg.

at 55,361.  It then extended the comment period for the proposed clarification on November 12,

1998, to allow for rebuttal arguments from interested parties.  <u>Antidumping and Countervailing</u>

<u>Duty Proceedings: Assessment of Antidumping Duties</u>, 63 Fed. Reg. 63,288, 63,288 (Dep't

Commerce Nov. 12, 1998) (rebuttal period for comments on policy concerning assessment of

antidumping duties).  The time for comment was extended again in 2002, to provide a last

opportunity for comment "[g]iven the passage of time since the publication of the Proposed

Clarification."  <u>Antidumping and Countervailing Duty Proceedings: Assessment of</u>

<u>Antidumping Duties</u>, 67 Fed. Reg. 13,599, 13,599 (Dep't Commerce Mar. 25, 2002) (notice of

additional comment period on proposed policy).  Publication of the final clarification was

accompanied by a detailed discussion and response to the comments and rebuttals submitted by

the parties, including comments received after the official end of the original comment period.

See 68 Fed. Reg. at 23,954 ("[W]e have decided to consider and respond to all comments in

order to allow for a thorough analysis of this issue.").

        Indeed, Plaintiffs do not attempt to argue that Commerce failed to provide notice

of the proposed clarification and an opportunity to comment on it.  Instead, Plaintiffs note that a

regulation should be labeled a "notice of proposed rulemaking" and listed in the semiannual

agenda of regulations in the Federal Register.  (Pls.' Combined Resp. to Def.'s Mot. to Dismiss

and Reply Br. in Supp. Mot. for J. on the Agency R. 15.)  As the Court of Appeals for the

District of Columbia Circuit recently noted, "the label, however, is not fatal."  U.S. Telecom

Ass'n, 400 F.3d at 40.  In that case, the FCC issued a "declaratory ruling" that altered the extent

of telephone companies' obligations to provide consumers with portable telephone numbers.  Id.

at 32–33.  The D.C. Circuit found that the declaratory ruling effected a substantive change in

policy, and therefore should have been treated as a legislative rule under the APA.  Id. at 38.

Nevertheless, the D.C. Circuit refused to invalidate the rule because the FCC had provided

notice and opportunity to comment on the proposed ruling, had explained its reasoning in its

final decision, and the plaintiffs had not pointed to any harm flowing from procedural

deficiencies in the rulemaking process.  Id. at 40–42.  Failure to label the legislative rule in the

semiannual agenda did not prejudice the plaintiffs, and therefore was not grounds to void the

FCC's policy.  Id. at 41.

        Similarly, in this case, Plaintiffs have not stated that they were prejudiced in any

way by the failure to label the "clarification" as a "proposed rule," and the court will not rule

that such a failure will automatically void Commerce's policy.  Plaintiffs also argue that in

publishing a new legislative rule, an agency is required to state whether the rule complies with

various statutes and executive orders, including the Regulatory Flexibility Act, 5 U.S.C. § 602,

and Executive Order Number 12,866.  (Pls.' Combined Resp. to Def.'s Mot. to Dismiss and

Reply Br. in Supp. Mot. for J. on the Agency R. 15.)   Plaintiffs expressly stated at oral

argument that they have suffered no prejudice as a result of Commerce's failure to state whether

the Reseller Policy complies with these requirements.  (See Oral Arg. Tr. 7:15–21, May 30,

2007.)  Under these circumstances, any error was admittedly harmless, and cannot serve as a

basis to void the Reseller Policy.

## Conclusion

For the reasons stated above, the court finds that the Reseller Policy is not

arbitrary, capricious, or otherwise inconsistent with law.  Consequently, Plaintiffs' Motion for

Judgment on the Agency Record is DENIED.  Judgment will issue for the Defendant.


                                   /s/ Jane A. Restani
                                  Jane A. Restani
                                  Chief Judge


Dated:  This 8th day of August, 2007.
          New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ———————————————— | : |
| | : |
| PARKDALE INTERNATIONAL, LTD., | : |
| RIVERVIEW STEEL CO., LTD., and | : |
| SAMUEL, SON & CO., LTD., | : |
| | : |
| Plaintiffs, | : |
| | :  Before:  Jane A. Restani, Chief Judge |
| and | : |
| | :  Court No. 06-00289 |
| RUSSEL METALS EXPORT, | : |
| | : |
| Plaintiff-Intervenor, | : |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| ———————————————— | : |

<u>JUDGMENT</u>

This case having been submitted for decision and the court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is DENIED.

Plaintiffs' Motion for Judgment on the Agency Record is DENIED.  Consequently, judgment is

entered in favor of Defendant and all remaining motions are DENIED as moot.


                                                         ____ /s/ Jane A. Restani____

                                                          Jane A. Restani

                                                          Chief Judge


Dated: This 8th day of August, 2007.
       New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of  the  court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____     By: _____
                                                                                  Deputy Clerk